1

2                    IN THE UNITED STATES DISTRICT COURT

3                    FOR THE EASTERN DISTRICT OF CALIFORNIA

4

5

6

7   BERNARD RAY McLELLAND,

8              Plaintiff,              1: 06 CV 0085 OWW WMW PC

9        vs.                          FINDINGS AND RECOMMENDATION

10

11

12  H. SANTOS, et al.,

13             Defendants.

14

15         Plaintiff is a state prisoner proceeding pro se in a civil rights action pursuant to 42 U.S.C.

16  § 1983 against correctional officials.   This action proceeds on the June 4, 2008, first amended

17  complaint against Defendants H. Santos, M. Taylor and T. Traynham.  Pending before the court

18  is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).   Plaintiff

19  has opposed the motion.

                               FACTUAL ALLEGATIONS

21         The allegations in this complaint stem from Plaintiff's refusal to accept a cellmate.  On

22  February 28, 2005, Plaintiff filed an inmate grievance, CDCR Form 602, regarding a cellmate.

23  Plaintiff, approved for double cell status, advised "them" that he would accept any member of the

24  crip gang, or anybody non affiliated with a gang.  Plaintiff also advised "them" that he must see

25  or know an individual before he would sign a compatibility chrono.  On March 2, 2005, Plaintiff

26

                                        1

submitted his grievance to Lt. Trayhan.  Trayhan assigned it to C/O Santos.  (Am. Compl. ¶¶ 7-8, 10-11).

On March 4, 2005, Plaintiff received a Rules Violation Report for refusing a cellmate. Plaintiff alleges that the RVR was back-dated, and was made in retaliation for Plaintiff's filing a grievance and not signing a compatibility chrono.  (Am. Compl. ¶ 12).

On March 8, 2005, Santos responded to Plaintiff's grievance.  Santos indicated that Plaintiff was not being harassed, but was being asked to receive a cellmate.   Plaintiff responded that un-named C/Os failed to provide him with a compatible cellmate.   Though unclear from the amended complaint, it appears that Plaintiff filed a grievance regarding the RVR.  (Am. Compl. ¶ 15).

On March 23, 2005, Plaintiff was interviewed by Sergeant Hernandez.  Hernandez denied the appeal at the first level.  On April 11, 2005, Plaintiff received his grievance back from the first level of review.  The grievance was denied because of Plaintiff's refusal to cooperate and sign the compatibility form.   On April 12, 2005, filed for a second level of review with the Appeals Coordinator.  Plaintiff's grievance stated that "he's a affiliated gang member and willing to freely and voluntarily sign the 1882 compatibility form to accept a cellmate that the set he's affiliated with get along with on the streets." (Am. Compl. ¶¶ 17, 20).     On April 30, 2005, Plaintiff was interviewed by Lt. Trayhan Trayhan denied Plaintiff's grievance, citing institutional security concerns.  (Am. Compl. ¶ 23).

Plaintiff alleges that specific retaliatory acts were taken against him for refusing to sign the inmate compatibility form.  Plaintiff alleges that On March 10, 2005, his television was illegally confiscated by C/O Taylor in retaliation for his refusal to sign the form.   Taylor told Plaintiff that he was ordered to do so by Lt. Trayhan. (Am. Compl. ¶ 24).

On April 3, 2005, Plaintiff filed a grievance regarding the confiscation of the television. Plaintiff notes in his grievance that confiscation of electronic devices is authorized if an

2

1    individual is found guilty a rules violation.  (Am. Compl. ¶ 25).

2         On April 10, 2005, Plaintiff received his grievance back from informal level of review.  It

3    was noted by C/O Boyd that Plaintiff's television would be returned to him once he signed the

4    compatibility form for a cellmate.   Plaintiff submitted his grievance to first level of review.  On

5    April 7, 2005, Plaintiff sent a letter to the Warden.  On May 4, 2005, Plaintiff received a response

6    to the letter from Associate Warden Stainer, indicating that the television was confiscated as a

7    result of Plaintiff being found guilty of a rules violation.  (Am. Compl. ¶ 36).

8         Plaintiff alleges that on May 12, 2005, an unidentified C/O "had McClelland withdraw

9    his grievance . . . while it was still pending review at the first level in exchange for his television

10   and signature on the consent form stating he received his illegal confiscated television back."

11   (Am. Compl. ¶ 38).   Plaintiff does not indicate whether he consented to a cellmate, but he did

12   receive his television after 63 days,  (Am. Compl. ¶ 39).

13        Plaintiff also alleges that his disciplinary violation for refusing to sign an inmate

14   compatibility form was motivated by retaliation.  Plaintiff contends that he was falsely charged.

15                                              EXHAUSTION

16        Defendants argue that Plaintiff has failed to exhaust his available administrative remedies

17   prior to filing suit.  Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be

18   brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by

19   a prisoner confined in any jail, prison, or other correctional facility until such administrative

20   remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Prisoners are required to

21   exhaust the available administrative remedies prior to filing suit.  Jones v. Bock, 127 S.Ct. 910,

22   918-19 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  Exhaustion is

23   required regardless of the relief sought by the prisoner and regardless of the relief offered by the

24   process, Booth v. Churner, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to

25   all prisoner suits relating to prison life, Porter v. Nussle, 435 U.S. 516, 532 (2002).

26

                                                     3

1    The California Department of Corrections has an administrative grievance system for

2    prisoner complaints.  Cal. Code Regs., tit. 15 § 3084.1 (2007).  The process is initiated by

3    submitting a CDC Form 602.  Id. at § 3084.2(a).  Four levels of appeal are involved, including

4    the informal level, first formal level, second formal level, and third formal level, also known as

5    the "Director's Level."  Id. at § 3084.5.  Appeals must be submitted within fifteen working days

6    of the event being appealed, and the process is initiated by submission of the appeal to the

7    informal level, or in some circumstances, the first formal level.  Id. at §§ 3084.5, 3084.6(c).  In

8    order to satisfy section 1997e(a), California state prisoners are required to use this process to

9    exhaust their claims prior to filing suit.  Woodford v. Ngo, 126 S.Ct. 2378, 2383 (2006);

10   McKinney, 311 F.3d at 1199-1201.

11   Defendants support their motion with the declaration of K. Sampson, the Appeals

12   Coordinator at CCI Tehachapi.  Exhibit E to the Sampson declaration is a copy of the inmate

13   grievance regarding the confiscation of Plaintiff's television.  This grievance is assigned log no.

14   CCI-05-0958.   There is no indication that the grievance was submitted to the final, director's

15   level of review.  Further, in his complaint, Plaintiff alleges that on May 12, 2005, he withdrew

16   this grievance after getting his television back.   On page 2 of Exhibit E, it indicates that the

17   grievance was withdrawn by Plaintiff.

18   Defendants also support their motion with the declaration of N. Grannis, the Chief of the

19   Inmate Appeals Branch in Sacramento.  In paragraph 6, Grannis declares that a search of the

20   Inmate Appeals Branch records reveal that between February 1, 2005 and January 27, 2006,

21   Plaintiff filed two grievances that were received and accepted for a director's level decision.  Log

22   numbers CCI-05-00573 and CCI-05-01609.  The grievance regarding the television set is log

23   number CCI-05-0098.  Defendants' exhibits indicate that Plaintiff did not submit his grievance at

24   the final, director's level of review.

25   As to the rules violation, Defendants argue that Plaintiff did not file a grievance regarding

26

4

1   that issue.  In grievance CCI-05-1609, Plaintiff does request dismissal of the charge of not

2   accepting a cellmate, but makes no reference to retaliation or false charges.  Plaintiff simply

3   disputes that he is guilty of the charge based on his expressed preference for an inmate that he

4   knows.  (Exhibit F to Sampson Decl.)  "[E]xhaustion is not *per se* inadequate simply because an

5   individual later sued was not named in the grievances." Jones v. Bock, 127 S.Ct. 910, 923

6   (2007).  "The level of detail necessary in a grievance to comply with the grievances procedures

7   will vary from system to system and claim to claim, but it is the prison's requirements, and the

8   not the PLRA, that define the boundaries of proper exhaustion." Id.  Woodford holds that the

9   purpose of exhaustion is to give prison officials an opportunity to address any alleged

10   wrongdoing prior to filing suit.  The failure to do so deprives officials of any opportunity to

11   review and take action on the alleged wrongdoing. Woodford, 548 U.S. at 88.  Here, Plaintiff's

12   core allegation is that he was falsely charged, a more serious allegation than a simple disputation

13   of guilt.  Moreover, Plaintiff alleges that he was falsely charged in retaliation for refusing to

14   accept a cellmate.  Neither of these charges is apparent in the grievance.  There is nothing in the

15   grievance at issue that would put officials on notice that a false charge was made, much less a

16   charge motivated by retaliation.

17       In his opposition, Plaintiff fails to come forward with any evidence that he exhausted his

18   available administrative remedies.  Plaintiff concludes that he has exhausted, but fails to provide

19   any evidence of this.  As Defendants note, Plaintiff's opposition consists largely of a reiteration

20   of the allegations of the first amended complaint.  Defendants correctly note that arguments are

21   not evidence.

22       Defendants have submitted evidence that Plaintiff has failed to exhaust his available

23   administrative remedies prior to filing suit.  Plaintiff has not come forward with any evidence

24   that he has.  Accordingly, IT IS HEREBY RECOMMENDED that Defendants' motion to

25   dismiss be granted, and this action be dismissed for Plaintiff's failure to exhaust his available

26

1   administrative remedies prior to filing suit.

2   These findings and recommendations are submitted to the United States District Judge

3   assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty days

4   after being served with these findings and recommendations, any party may file written

5   objections with the court and serve a copy on all parties.  Such a document should be captioned

6   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

7   shall be served and filed within ten days after service of the objections.   The parties are advised

8   that failure to file objections within the specified time waives all objections to the judge's

9   findings of fact.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).  Failure to file

10  objections within the specified time may waive the right to appeal the District Court's order.

11  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

12

13      IT IS SO ORDERED.

14  **Dated:    February 27, 2009            /s/  William M. Wunderlich**
                              UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26